

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

No. AP-75,940

EX PARTE CLAY REED CHABOT, Applicant

Application for a Writ of Habeas Corpus from
Case No. F-86-98639-UP of the 203rd Judicial District Court of
Dallas County

*WOMACK, J., delivered the opinion of the Court, in which MEYERS,
PRICE, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.
KELLER, P.J., and KEASLER, J., concurred in the judgment.*

This is a post-conviction application for a writ of habeas corpus brought pursuant to

Article 11.07 of the Texas Code of Criminal Procedure. We agree with the convicting court's

recommendation to grant relief.

The applicant was convicted of murder and sentenced to life imprisonment. On appeal, he

alleged that the evidence was insufficient to corroborate the testimony of accomplice witness

Gerald Pabst and that the trial court erred in admitting evidence of extraneous offenses. The Fifth Court of Appeals affirmed his conviction.[1]

The applicant filed his first application for habeas relief in 1991, which we denied.

In this application, the applicant brings eight claims,[2] among them that Pabst, the State's chief witness, presented perjured testimony at trial, which would make his conviction a denial of due process as embodied in the Fourteenth Amendment to the United States Constitution.[3] We grant relief.

<u>Facts</u>

On April 19, 1986, the victim, Galua Self Crosby, was found in her bed, in the home she shared with her husband, where she had been bound, gagged, sexually assaulted, and shot three times in the head.

According to Pabst's testimony at the applicant's trial, he and the applicant had gone to the victim's home looking for her husband about a recent drug deal. Although Crosby was home alone, the applicant went inside the house and demanded drugs and money. When the victim produced neither, the applicant threatened her with a gun. In his testimony, Pabst claimed that he had wanted to leave, that he repeatedly told the applicant that they should leave, that the applicant refused, and that he himself did not leave because he was scared of the applicant. The applicant

---

[1] *Chabot v. State*, No. 05-86-01168-CR (Tex. App.—Dallas Oct. 27, 1987, pet. ref'd) (not designated for publication).

[2] The remaining claims include allegations of actual innocence and violations of *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] The applicant also requested relief under the due-course-of-law provision in Article I, Section 13 of the Texas Constitution, as well as "related statutes." Due to our disposition of the applicant's claim under the United States Constitution, we do not address his state-law claims.

told Crosby to go into the bedroom, where he made her lie face down on the bed, and ordered

Pabst to tie her feet while he tied her hands. He then told Pabst to disconnect the television. While

disconnecting the television in another room, Pabst heard Crosby say "No" and then heard

gunshots from the bedroom. Pabst ran out of the house, and eventually the applicant joined him.

<u>Applicant's Claim</u>

The current application is based on the June 28, 2007 results of DNA testing done on the

victim's vaginal slides, ordered under Code of Criminal Procedure Chapter 64. The applicant

claims that this new DNA evidence establishes that Pabst's trial testimony was perjured. He

points to the fact that "Pabst denied sexually assaulting or harming the victim in any way, claimed

that he acted only under duress, and insisted that he was in another room of the house when these

violent acts occurred." The DNA evidence, he says, contradicts this testimony because it excludes

both the applicant and the victim's husband but matches Pabst's DNA profile. It shows, "at a bare

minimum, that Pabst perjured himself when he claimed that he had no sexual contact with the

victim, and eviscerates his credibility as a witness."

The applicant contends that jurors were specifically instructed that they were legally

required to find Pabst's testimony true in order to convict the applicant. He also argues that Pabst

provided the only evidence that directly placed him at the crime scene and that, "[g]iven the

undeniable centrality of Pabst's testimony to the case as tried in 1986, that jury could not – and

would not – have convicted Mr. Chabot without substantial reliance on Pabst's testimony and,

accordingly, without first finding him to have been a truthful witness." He further argues that no

rational jury would have found Pabst to be truthful had they known about the DNA evidence.

The applicant claims that, under *Ex parte Carmona*,[4] due process is violated when a conviction based on (in his words) "a foundation of perjury by the State's chief witness" is allowed to stand. He maintains that here, due process requires that his conviction be vacated and a new trial ordered.

### Article 11.07, Section 4(a)(1) Requirements

Under Texas law, this court may not consider the merits of or grant relief on a subsequent application for a writ of habeas corpus unless:

> the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.[5]

The applicant did not raise this due-process claim in his first application for habeas relief. Nor could he have brought the claim. At the time he filed his first habeas application in 1991, neither the DNA testing nor Code of Criminal Procedure Chapter 64 was available as an avenue for relief. The applicant's due-process claim therefore meets the statutory requirements of Article 11.07, Section 4(a)(1) and is not procedurally barred.

### Analysis of Due Process Claim

This court has held that the Due Process Clause of the Fourteenth Amendment is violated where the State knowingly uses perjured testimony to obtain a conviction.[6] Is due process violated when the State has unknowingly presented perjured testimony? A plurality in *Carmona* held that a

---

[4] 185 S.W.3d 492 (Tex. Cr. App. 2006) (plurality opinion).

[5] CODE CRIM. PROC. art. 11.07, § 4(a)(1).

[6] *Ex parte Fierro*, 934 S.W.2d 370 (Tex. Cr. App. 1996); *Ex parte Castellano*, 863 S.W.2d 476 (Tex. Cr. App. 1993).

community-supervision revocation based solely on perjured testimony, unknown to the State at the time of revocation, to have violated the applicant's due process rights.[7]

The knowing use of perjured testimony is a trial error that is subject to a harmless error analysis.[8] Under the applicable standard, the "applicant has the burden to prove by a preponderance of the evidence that the error contributed to his conviction or punishment."[9] Although the present case involves unknowing, rather than knowing, use of testimony, we see no reason for subjecting the two types of errors to different standards of harm.

In its response to the current application, the State conceded that Pabst presented perjured testimony at trial (as proven by the 2007 DNA test results), that Pabst was the State's primary witness whose testimony was critical to the State's case against the applicant, that Pabst's false testimony more likely than not contributed to the applicant's conviction and punishment, and that the applicant is entitled to relief in the form of a new trial.

The State submitted Proposed Findings of Fact and Conclusions of Law, which were adopted by the convicting court without a hearing. The Findings and Conclusions include the following:

- The 2007 DNA test results link Pabst to the vaginal sexual assault of Galua Self Crosby. Thus, they establish the falsity of Pabst's trial testimony denying that he sexually assaulted Ms. Crosby. They also establish the falsity of other evidence and argument offered by the State that Pabst was a non-violent person who could not have harmed Ms. Crosby.
- The State presented Pabst's testimony in the guilt phase of applicant's trial. Thus, the State used the false testimony against applicant.

---

[7] *Carmona*, 185 S.W.3d 492.

[8] *Fierro*, 934 S.W.2d, at 374.

[9] *Id.*, at 374-75.

- Although the State presented other evidence linking applicant to Ms. Crosby's sexual assault and murder, Pabst's testimony was crucial to the State's case at applicant's trial. The State predicated its trial theory on Pabst's testimony that he only helped bind Ms. Crosby and that applicant alone sexually assaulted and shot her. The State supported this theory by presenting the testimony of other witnesses who characterized Pabst as a non-violent person who would not harm a woman. Furthermore, Pabst's false testimony was the only purported eyewitness account of the sexual assault and murder of Ms. Crosby; applicant testified, but he denied that he murdered or sexually assaulted Ms. Crosby and claimed he was not even present during the assault and murder. In light of the foregoing, Pabst's false testimony more likely than not contributed to the applicant's conviction and punishment.
- Applicant argues, alternatively, … that the State should have known of the false nature of Pabst's testimony at the time it was presented at trial. In light of *Carmona*, however, because Pabst's perjured testimony was crucial to the case presented by the State and because the false nature of Pabst's testimony is now undisputed, this Court need not reach the issue of the State's knowledge.
- Based on the foregoing, the Court finds applicant has proven by a preponderance of the evidence that his federal … constitutional due process rights were violated.
- The Court concludes applicant is unlawfully restrained and confined and recommends that the Court of Criminal Appeals grant applicant relief on his false evidence claim by reversing and remanding to the Court for a new trial.[10]

In post-conviction review of habeas corpus applications, this court is the ultimate factfinder.[11] The convicting court is the "original factfinder," and the Court of Criminal Appeals generally defers to and accepts the convicting court's findings of fact and conclusions of law when they are supported by the record.[12] "When our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions."[13]

In this case, the convicting court's findings and conclusions are supported by the record.

---

[10] Internal citations omitted.

[11] *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Cr. App. 2008).

[12] *Ibid.*

[13] *Ibid.*

The DNA test results conclusively link Pabst to Crosby's sexual assault and therefore show that he perjured himself at the applicant's trial. Pabst's testimony provided the only direct evidence that the applicant sexually assaulted and killed Crosby. The State acknowledges that Pabst's testimony was critical to its case and that it predicated its trial theory on his testimony. The DNA test results refute not only Pabst's testimony itself but also that of another State's witness who characterized Pabst as a non-violent person who would never hurt a woman, testimony which lent credence to Pabst's version of events.

Further, the convicting court, with the support of the State, has found that the applicant's due-process rights have been violated. Based on our decision in *Carmona*, we agree with the convicting court that the circumstances of the present case merit a finding that the applicant's due-process rights were violated, notwithstanding the absence of the State's knowledge of the perjured testimony at the time of trial.

In light of the foregoing, we agree that it is more likely than not that Pabst's perjured testimony contributed to the applicant's conviction and punishment. Because the convicting court's findings and conclusions are supported by the record, this court accepts them. Having so found as to the applicant's first claim, we need not reach his remaining claims.

Relief from the judgment of conviction is granted. The applicant is remanded to the custody of the Sheriff of Dallas County to answer the charge set out in the indictment.

Delivered December 9, 2009.
Publish.