

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-61,055-02

### Ex parte LINDA CARTY, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS
### CAUSE NO. 877592 IN THE 177TH JUDICIAL DISTRICT COURT
### HARRIS COUNTY

**KELLER, P.J., filed a dissenting opinion.**

Applicant was convicted of capital murder and sentenced to death in February 2002. She

filed her first habeas application in 2003, and we denied relief on that application in 2005. In a

subsequent habeas application filed in 2014, applicant now contends, *inter alia*, that newly

discovered evidence shows that the State knowingly used false testimony and suppressed exculpatory

evidence. The Court finds that these claims satisfy an exception to the bar against subsequent

applications and remands these claims for consideration of their merits.[1] I disagree and would

dismiss the habeas application as barred under Article 11.071, § 5.

### A. § 5

A court may not consider the merits of a subsequent habeas application unless "the

---

[1] *See* TEX. CODE CRIM. PROC. art. 11.071, § 5(a).

application contains sufficient specific facts" establishing one of the following exceptions:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt;  or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071,  37.0711, or  37.072.[2]

To be considered on the merits, then, a claim in a subsequent application must be based upon previously unavailable facts or law, or else it must satisfy the innocence or innocence-of-the-death penalty gateway standards.  Applicant alleges all of these exceptions, but she satisfies none of them.

### B. Previously Unavailable Facts

### 1. *The Alleged Factual Bases*

Applicant presents affidavits obtained in 2014 from Christopher Robinson, Marvin Caston, Gerald Anderson, and former DEA Agent Charlie Mathis.  Robinson and Caston's affidavits allege that the prosecutors coerced them into giving false testimony at trial about applicant's conduct that incriminated applicant.  Applicant additionally contends that Caston's affidavit shows that some sort of deal was struck between him and the State that was not disclosed to the defense.[3]  Gerald

---

[2]  *Id.*

[3]  In his affidavit, Caston alleges that the prosecutors repeated the same threat in various meetings: "that I would be sentenced to thirty years unless Linda Carty got the death penalty and Chris Robinson got thirty to forty years."  Caston further stated that the prosecutors "essentially promised me that if Linda *did* get the death penalty, and if Chris did get thirty or forty years, then I would *not* get thirty years myself."  (Emphasis in original).

Anderson's[4] affidavit alleges that the prosecutors attempted to coerce him into testifying falsely at applicant's trial but that he declined to do so and was ultimately assessed a life sentence. Mathis's affidavit alleges that the prosecutors engaged in coercive conduct when they interrogated applicant and alleges, based on his experience with her as an informant, that applicant was not the sort of person who would have committed capital murder.

## 2. *Diligence in General*

Under Article 11.071, § 5, the factual basis of a claim is unavailable if "the factual basis was not ascertainable through the exercise of reasonable diligence on or before" the date the application was filed.[5] None of the affidavits offered by applicant satisfies this reasonable diligence standard. Although the affidavits were obtained in 2014, applicant does not claim that these witnesses stepped forward on their own. The question arises why applicant could not have obtained this information by the time she filed her first habeas application.

Applicant contends that she was entitled to rely upon a presumption that the State would disclose exculpatory materials and inform the defense of any false testimony. But almost all of the alleged false and exculpatory evidence relates to applicant's own conduct. Applicant had knowledge of her own conduct on the day of the incident. If Robinson and Caston had lied about applicant's conduct in their testimony, applicant would have known, at trial, that they had lied. She also had knowledge of how the prosecutors interrogated her and of her own relationship as an informant with Mathis. She did not need the State to inform her of her various interactions with the State's

---

[4] Because a person named Josie Anderson was also involved in this case, I refer to Gerald Anderson throughout by both his first and last names.

[5] *Id.* § 5(e).

witnesses. She would need to discover whether the witnesses would admit to the truth (if in fact they had lied or did possess exculpatory information about her) and whether the State was behind a particular witness's failure to convey complete and truthful information. To discover that, all her defense team needed to do was interview the witnesses, if the witnesses would talk.

Gerald Anderson did not testify, and so the value of his affidavit relates primarily to information applicant would not have been privy to: the prosecutors' alleged attempts to coerce him to commit perjury. But because he did not testify against her, she would have reason to believe that he would be sympathetic to her, especially after he received his life sentence for aggravated kidnapping, imposed on November 22, 2002. He could have been queried at that time about his interactions with the State, if he were willing to talk.

### 3. *Caston and Gerald Anderson*

Applicant claims only that Robinson and Mathis had declined to talk earlier about the case. She does not claim that there was ever any impediment to talking with Caston and Gerald Anderson, and, so, she has failed to show that Caston and Gerald Anderson's affidavits could not have been procured for use in her first habeas application.

### 4. *Robinson*

To show that Robinson refused until now to disclose the information in his affidavit, applicant relies upon the following statement in that affidavit: "For years I just didn't want to talk about this case; but this is the truth of what happened." But not wanting to discuss something is not the same as refusing to discuss it. There is no allegation that Applicant ever tried to talk to Robinson about her case, so we do not know whether he would have discussed the case if applicant had asked. Moreover, Robinson says he was scared "at Linda Carty's trial" because of the State's threats, but

once he had pled guilty to aggravated kidnapping and received a life-without-parole sentence, he had no reason to be scared of the State's threats. Applicant has failed to establish that Robinson's testimony was previously unavailable.

### 5. *Mathis*

Applicant's claim of unavailability with respect to Mathis's affidavit rests on a foundation of sand. Applicant relies upon the following statement: "Since my last affidavit, I have attempted to avoid speaking to Linda Carty's defense team because I have serious on-going health complications and because this case is a source of stress and difficulty for me." Mathis says only that he attempted to avoid contact with the defense team *after* his prior affidavit. The prior affidavit was signed in October 2005. Even if Mathis's statement were taken as evidence that he refused to talk to the defense team after October 2005, applicant has alleged no facts to suggest that she could not have contacted Mathis in 2003, when her first habeas application was filed. And the fact that an affidavit was obtained in 2005 suggests that Mathis was indeed willing to talk to the defense.

### C. Previously Unavailable Law

Applicant also claims that *Ex parte Chabot*[6] provides a previously unavailable legal basis because it was the first time this Court recognized that the prosecution's *unknowing* use of false testimony could be a due process violation. But the Court does *not* remand on applicant's "unknowing use" claim, and I agree with the Court's decision in that regard. The law regarding the *knowing* use of false evidence has long been well established,[7] as is the case with the law regarding

---

[6] 300 S.W.3d 768 (Tex. Crim. App. 2009).

[7] *See Ex parte Fierro*, 934 S.W.2d 370 (Tex. Crim. App. 1996).

the suppression of exculpatory evidence.[8]

### D. Innocence and Innocence of the Death Penalty

Applicant contends that no rational juror could have found her guilty or assessed the death penalty absent the alleged constitutional violations. To support this contention, she asserts that the violations "go to the heart of Carty's capital murder trial and undermine the State's theory of the case" and that "the suppressed evidence and misleading testimony went to whether Carty acted intentionally in killing Rodriguez and whether her actions (if true) actually killed Rodriguez." Even if we accepted these assertions, that would not show that no rational juror could have found her guilty or assessed a death sentence. The evidence at trial included testimony not only from Robinson and Caston, but also from alleged accomplices Josie Anderson and Zebediah Combs, as well as a significant amount of non-accomplice evidence connecting applicant to the murder.[9]

Applicant also relies upon affidavits submitted by four jurors who claim that, had they known about certain allegedly exculpatory facts contained in the affidavits in the habeas record, they would not have found applicant guilty of capital murder or would not have assessed the death penalty. These affidavits are inadmissible under Texas Rule of Evidence 606(b) and cannot be considered.[10] Even if they could be considered, evidence that jurors who served in a defendant's trial would not have found a defendant guilty or assessed the death penalty does not establish that *no rational juror* would have done so.

---

[8] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[9] *Carty v. State*, No. 74,295, slip op. (Tex. Crim. App. April 7, 2004) (not designated for publication).

[10] *See* TEX. R. EVID. 606(b).

I respectfully dissent.

Filed: February 25, 2015
Do Not Publish