

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-69,291-01

### EX PARTE CALVIN LETROY HUNTER, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS CAUSE NO. 968719-C IN THE 230TH DISTRICT COURT FROM HARRIS COUNTY

**ALCALA, J., filed a concurring statement.**

### CONCURRING STATEMENT

I concur in the Court's decision to remand the application for a post-conviction writ of habeas corpus filed by Calvin Letroy Hunter, applicant, to the habeas court for further fact findings. I write separately to explain my view as to why the habeas court's original findings and conclusions are an inadequate basis upon which to resolve applicant's claim, and to clarify what I view as the proper legal standard applicable to this case.

Applicant contends that the introduction of false expert testimony at his trial violated his due-process rights by improperly persuading the jury to reject his claim that he is

ineligible for the death penalty because of his intellectual disability. The habeas court recommends that this Court grant applicant relief in the form of a new punishment trial based on its determination that that stage of the proceedings was infected by the false testimony of Dr. Denkowski, who opined that applicant's IQ scores underestimated his true intellectual functioning, and that such false testimony violated applicant's due-process rights. My review of the habeas court's fact findings reveals that, in assessing whether there was a reasonable likelihood that Dr. Denkowski's false testimony affected the jury's determination that applicant did not have an intellectual disability, the habeas court extensively addressed applicant's subaverage IQ, but failed to adequately consider whether he had significant adaptive deficits, and, therefore, I agree with this Court's decision to remand this application to the habeas court for further fact findings.

In determining that Dr. Denkowski's false testimony was material to the fact finder's decision that applicant was not intellectually disabled, the habeas court's fact findings largely focus on evidence of applicant's subaverage IQ before the age of eighteen, but fail to address whether applicant had significant adaptive deficits. *See Ex parte Briseno*, 135 S.W.3d 1, 7 (Tex. Crim. App. 2004) (proof of intellectual disability requires evidence of (1) significantly subaverage general intellectual functioning that is (2) concurrent with deficits in adaptive behavior, and (3) onset before age 18). The habeas court's fact findings, therefore, are inadequate in that they fail to consider the likely effect of Dr. Denkowski's false testimony based on the entire record with respect to whether applicant is intellectually disabled.

Based on the habeas court's fact findings, applicant has presented an overwhelming case that he has subaverage intellectual functioning with an onset before the age of eighteen. The habeas court's findings and conclusions indicate that,

• On January 7, 1980, when he was eight years old, applicant's verbal IQ was 65, his performance IQ was 68, and his full-scale IQ was 64 on the Wechsler Intelligence Scale for Children – Revised, which placed him within the range of subaverage intellectual functioning;

• In 2004, applicant's verbal IQ was 72, his performance IQ was 80, and his full-scale IQ was 74 on the Wechsler Adult Intelligence Scale – Third Edition, which placed him within the range of subaverage intellectual functioning;

• In high school, applicant was classified as "educable mentally handicapped," which is a "low functioning group equivalent to educable mentally retarded";

• Applicant was placed in special education and graduated with a "special education" high school diploma with a grade point average of 1.98;

• Dr. Garnett conducted a medical review of applicant before trial and testified that applicant met the criteria for intellectual disability under the current, approved standards in use;

• Dr. Denkowski, the State's sole expert witness during the punishment phase of applicant's capital-murder trial and the only expert to testify that applicant is not intellectually disabled, provided "unreliable and false testimony";

• Dr. Denkowski did not administer the WAIS-III to applicant himself "because applicant had taken the test one month prior, and the doctor did not feel any scores obtained would be a true measure of applicant's intellectual functioning";

• Although Dr. Denkowski did not administer any IQ test to applicant, he opined that applicant's IQ scores "underestimated his true intellectual functioning";

• Dr. Averill noted several errors in Dr. Denkowski's methodology and testimony, including that Dr. Denkowski was "incorrect" in determining that applicant's scores on the previously administered WAIS-III were not "an accurate reflection of his current level of functioning";

• In 2007, the State Board of Psychiatric Examiners filed a complaint against Dr. Denkowski, asserting that the methods he used to evaluate whether death row inmates are mentally retarded were "unscientific, unethical, and in violation of several Board rules";

• In 2011, Dr. Denkowski entered into a settlement agreement with the Texas State Board of Examiners of Psychologists, in which his license was "reprimanded," and he agreed not to perform forensic psychological services in the evaluation of subjects for intellectual disability in criminal proceedings;

• Dr. Hays averred that Dr. Denkowski used a false title in describing himself as a clinical psychologist, deviated from "acceptable professional practice in the work that he performed," did not adhere "to scientific testing approaches in his assessment," and violated "several professional standards [with respect to his examination of] the defendant"; and

• Dr. Murphy diagnosed applicant as having an intellectual disability after testing him on the Stanford-Binet Intelligence Scales, Fifth Edition, and determining that he had a 74 IQ score; she concluded that applicant's overall intelligence is "borderline delayed" and is ranked in the fourth percentile.

On the basis of these findings, the habeas court concluded that Dr. Denkowski's false testimony "more likely than not contributed to the jury's rejection of [applicant's] intellectual disability claim" based on the record that showed that Dr. Denkowski was the sole witness who claimed that applicant did not have a subaverage IQ.

Although the habeas court has made extensive findings on the evidence of subaverage intellectual functioning and onset before age 18, the habeas court failed to make adequate findings discussing whether applicant has significant adaptive deficits and whether, in light of the evidence pertaining to applicant's adaptive deficits, it is reasonably likely that Dr. Denkowski's false testimony would have affected the jury's determination that applicant was

not intellectually disabled. By focusing largely on the IQ tests and multiple doctors' opinions about those tests, the habeas court does not discuss whether the evidence indicates that applicant had significant adaptive deficits.

The issue before us is whether applicant is entitled to a new punishment hearing based on the false evidence that was presented by Dr. Denkowski. The habeas court has made detailed fact findings and, on the basis of those findings, it concluded that Dr. Denkowski's false testimony likely would have affected the jury's determination that applicant was not intellectually disabled. But if Dr. Denkowski's false evidence was inconsequential to the defendant's proof on the question of his significant adaptive deficits, then the defendant may be eligible for the death penalty even if a fact finder believed that the defendant had subaverage intellectual functioning and onset before the age of 18. *See Briseno*, 135 S.W.3d at 7. It is important, therefore, for the habeas court to have considered all the evidence in the record, including the evidence relating to applicant's adaptive deficits, in determining whether Dr. Denkowski's false evidence would have likely affected the jury's determination with respect to the question of his intellectual disability. I also note that, to some extent, the habeas judge misstated the law in his conclusions of law, for example, by too broadly suggesting that, if "the jury considered Dr. Denkowski's false/unreliable testimony at all, then its determination that applicant was not mentally retarded violates applicant's right to be free from cruel and unusual punishment." *See Ex parte Chabot*, 300 S.W.3d 768, 771 (Tex. Crim. App. 2009) (applicant must prove that use of false evidence caused him harm,

not just that it was considered at all). Because the habeas court's extensive findings and conclusions fail to discuss the probable impact of Dr. Denkowski's testimony in light of all the evidence in the record pertaining to applicant's intellectual-disability claim, I agree with the Court's decision to remand for additional findings.

Filed: April 22, 2015

Do Not Publish