

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-78,108-01

### EX PARTE NOAH ESPADA

### ON APPLICATION FOR WRIT OF HABEAS CORPUS
### CAUSE NO. 2004-CR-3638-W1 IN THE 379TH JUDICIAL DISTRICT COURT
### BEXAR COUNTY

*Per Curiam.  HERVEY, RICHARDSON, and YEARY, JJ., not participating.*

### OPINION

This is a post-conviction application for writ of habeas corpus filed pursuant to the

provisions of Texas Code of Criminal Procedure article 11.071.  Applicant was convicted in

August 2005 of capital murder committed in March 2004.  TEX. PENAL CODE ANN. §

19.03(a).  Based on the jury's answers to the special issues set forth in the Texas Code of

Criminal Procedure, Article 37.071, sections 2(b) and 2(e), the trial court sentenced him to

death.  Art. 37.071, § 2(g).[1]  This Court affirmed applicant's conviction and sentence on direct appeal.  *Espada v. State,* No. AP-75,219 (Tex. Crim. App. Nov. 5, 2008) (not designated for publication), *cert. denied*.

Applicant's grounds for relief challenge the validity of his conviction and sentence. Applicant's specific grounds are without merit.  However, in the course of attempting to prove that the State knowingly presented false testimony at the punishment phase, applicant established that the State unknowingly presented material false testimony in violation of due process.  *See Ex parte Chabot,* 300 S.W.3d 768, 771 (Tex. Crim. App. 2009).

At trial, to demonstrate that applicant would constitute a future danger even in prison, the State presented the testimony of several jail guards concerning applicant's conduct.  This included the testimony of Christopher Nieto, a former deputy who stated that he had written three disciplinary reports against applicant after finding Xanax pills in applicant's bunk and after witnessing applicant assault another detainee without provocation.  Nieto also testified that he overheard applicant bragging about the offense of conviction to his cell mate.

The trial court conducted a live habeas hearing during which Nieto, other guards, and detainees testified.  At the habeas hearing, it was established that Nieto testified falsely at trial concerning his employment history with the Bexar County Sheriff's Office.  For example, it was revealed that less than a month before Nieto reported applicant's disciplinary offenses, Nieto left his assigned work area in order to confront and threaten applicant.  This

---

[1] Unless otherwise indicated all references to Articles refer to the Code of Criminal Procedure.

improper conduct resulted in his suspension. When questioned at the habeas hearing about the Order of Suspension describing this conduct, Nieto denied that he had confronted applicant and stated that the officer who reported the incident made it up because of a personal grudge. He stated that the captain who handled the suspension proceedings advised him not to challenge the officer's report, even if it contained false allegations, and just accept the suspension. Both the reporting officer and the captain testified at the habeas hearing and contradicted Nieto's account of the circumstances of his suspension. Another guard who had worked with the reporting officer and Nieto testified that he would believe the reporting officer's account of Nieto's misconduct.

It was also revealed at the habeas hearing that Nieto was under investigation for providing controlled substances to detainees when he resigned from the Sheriff's Office. A vehicle inspection conducted pursuant to this investigation led to the discovery in Nieto's car of a bag containing marijuana, a bong, and plastic packaging consistent with drug trafficking. Nieto resigned from the Sheriff's Office rather than submit to a polygraph examination concerning his explanation for the contraband found in his car. This evidence refuted Nieto's trial testimony that he resigned from the Sheriff's Office after a random vehicle inspection uncovered "half a joint" that his brother-in-law had left in his car, and that Nieto had passed a polygraph examination confirming his explanation for the presence of the "half joint" in his car.

In addition, a probation officer who had supervised Nieto testified at the habeas hearing. Nieto's probation records showed that in 2006, Nieto was charged with theft of

property valued between $1500 and $20,000. These records included a dependency counselor's report, dating from 2008, identifying the following traits: "cannabis dependent, cocaine abuse, negative learned behaviors, manipulativeness, denial of treatment needs, underemployment, [and] lack of impulse control." Concerning the theft offense, the habeas record indicates that Nieto was initially placed on deferred adjudication, was later adjudicated guilty and placed on probation, and finally was sentenced to a term of imprisonment.

These and other revelations cast doubt upon the credibility of Nieto's trial testimony concerning applicant. The prosecutor testified that he would not have presented Nieto's testimony at trial if he had known about Nieto's dishonest and criminal conduct.

In addition, detainee testimony – including the testimony of the detainee applicant reportedly assaulted – controverted Nieto's trial testimony that applicant had committed an unprovoked assault. The detainees' testimony further undermined the credibility of Nieto's trial testimony concerning applicant's conduct while in jail. Nieto testified at the habeas hearing that he did not remember the detainees who testified or any of applicant's disciplinary offenses, including the assault. When habeas counsel asked Nieto why the detainees would make up allegations against him, Nieto responded, "I mean, come on, man, they're on the other side of the law."

At trial, the State presented evidence of applicant's future dangerousness from sources other than Nieto. This evidence included additional disciplinary offenses. We conclude, however, that Nieto's reports and testimony were not merely cumulative of other evidence

because the State expressly relied on the acts of misconduct reported by Nieto during its examination of the future dangerousness experts and again during closing argument. Further, during the State's examination of guards and detainees and again in closing argument, the State endorsed the honesty of the guards (including Nieto) and characterized the detainees' testimony as not credible.

Following the evidentiary hearing, the trial court found that the State did not withhold exculpatory evidence or knowingly present false testimony, and that trial counsel was not ineffective for failing to discover the information concerning Nieto before trial. However, the trial court also found that Nieto presented false testimony. The trial court stated that this false testimony was "more likely than not the tipping point" on the issue of future dangerousness. The trial court concluded that applicant established by a preponderance of the evidence that Nieto's false testimony was material to the jury's finding of future dangerousness and recommended granting a new punishment hearing.

In post-conviction habeas corpus review, this Court is the ultimate fact finder, but the trial judge is the original fact finder. This Court will defer to and accept the convicting court's findings of fact and conclusions of law, as long as they are supported by the record. This is particularly true in matters concerning the weight and credibility of witnesses. *See Ex parte Henderson,* 384 S.W.3d 833, 834 (Tex. Crim. App. 2012). We review de novo the ultimate legal conclusion of whether false testimony was "material." *See Ex parte Weinstein,* 421 S.W.3d 656, 664 (Tex. Crim. App. 2014).

This Court has reviewed the record with respect to the allegations made by applicant. The trial court's findings of fact and conclusions of law are supported by the record. Accordingly, we adopt the court's recommendation. Except for the allegation of material false testimony, we conclude that applicant's allegations are without merit and deny relief. With respect to the allegation of material false testimony, we grant relief and remand the cause for a new punishment hearing.


Do Not Publish
Delivered: July 1, 2015