

# In the Court of Criminal Appeals of Texas

No. WR-95,386-02

EX PARTE BYRON JERMAINE PROPHET,

*Applicant*

On Application for Writ of Habeas Corpus
In Cause No. 1155797-A in the 337th District Court
Harris County

YEARY, J., filed a dissenting opinion in which KELLER, P.J., and SLAUGHTER, J., joined.

In a brief per curiam opinion, the Court today grants Applicant relief on the grounds that former Houston Police Department narcotics officer Gerald Goines made false statements in a warrant affidavit that was used to obtain evidence of Applicant's guilt and gave false testimony at Applicant's trial. I would not rule out that Applicant may ultimately

be entitled to relief from his conviction for possession with intent to deliver cocaine in this case. But I believe the Court reaches that conclusion without adequate consideration of important predicate questions of law and on an underdeveloped record.

## I. BACKGROUND

On February 25, 2008, Gerald Goines, then a Houston Police Department narcotics officer, purportedly provided cash to a confidential informant who purchased cocaine at a residence in southeast Houston. Based on an affidavit from Goines that included these allegations, the next day, February 26th, a magistrate issued a warrant to search the home for cocaine. The following day, Goines and a team of other officers executed the warrant.

Applicant was one of four people apprehended outside the home during the execution of the warrant. Inside the home, officers discovered, among other things, over 100 grams of cocaine. Applicant was arrested at the scene and was later charged with possession with intent to deliver between four and 200 grams of cocaine, a first-degree felony.[1] He pled not guilty and was tried before a jury in October of 2008.

At trial, Goines's testimony helped to establish Applicant's possession of the cocaine that law enforcement found inside the home. Of particular relevance, Goines testified that: (1) prior to ordering the execution of the warrant, he had observed four people outside the home but had seen only Applicant enter the house, using a key to unlock a set

---

[1] TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D) (designating cocaine as a Penalty Group 1 controlled substance), 481.112(d) (establishing possession with intent to deliver between four and 200 grams of a Penalty Group 1 controlled substance as a first-degree felony).

of burglar bars on a door to the home; (2) Applicant had a key to the burglar bars in his pocket, which Goines retrieved; (3) Applicant's photo ID was found on the kitchen counter inside the home near the drugs; and (4) Applicant requested that Goines leave the house and a car outside in a relative's custody after he was arrested. This testimony circumstantially tied Applicant to the home and to the cocaine found therein.

Applicant testified in his own defense. He did not deny that the ID found in the house was his, but he testified that he was unaware of how it came to be there. Applicant specifically denied the remainder of Goines's assertions and testified that Goines was lying. The jury ultimately found Applicant guilty and sentenced him to sixteen years' imprisonment. The First Court of Appeals affirmed his conviction. *Prophet v. State*, No. 01-08-00863-CR, 2010 WL 143472 (Tex. App.—Houston [1st Dist.] Jan. 14, 2010) (mem. op., not designated for publication).

In March of 2019, nine years after Applicant's conviction became final, the Harris County District Attorney sent Applicant a letter notifying him that Goines had been removed from duty and was under criminal investigation. With the assistance of the Harris County Public Defender's Office, Applicant filed an initial application for a writ of habeas corpus in January of 2024. He has since filed a supplemental and a pro se supplemental application.

Applicant pleads two grounds for relief. First, he asserts that his "due process rights were violated when false information was used to secure the search warrant, which allowed officers to enter the house

where drugs were found." Second, he argues that his "due process rights were violated when the State used material false evidence at his trial." Specifically, Applicant argues that Goines's statements in his search warrant affidavit and his testimony at Applicant's trial should be presumed false under the standard articulated by this Court in *Ex parte Coty*, 418 S.W.3d 597 (Tex. Crim. App. 2014), as extended in *Ex parte Mathews*, 638 S.W.3d 685 (Tex. Crim. App. 2022). The convicting court has signed the parties' agreed findings of fact and conclusions of law and recommends that this Court grant Applicant relief on both grounds.

Today, the Court accepts the convicting court's recommendation and grants Applicant relief on both grounds alleged in his application, citing only *Coty* and *Mathews* as authority. Majority Opinion at 2. While I do not rule out that Applicant may ultimately be entitled to relief, for the reasons I explain below, I cannot join the Court in its judgment.

## II. THE SEARCH WARRANT AFFIDAVIT

To begin with, I believe that it is incumbent on the Court to explain why and how the *Coty/Mathews* framework extends to allegations made in a search warrant affidavit. *Coty* established that when an applicant in a drug case can satisfy a five-part test focused on misconduct by a forensic analyst, the Court will presume that the testimony and/or evidence presented against the applicant by the analyst is false.[2] In *Mathews*, the Court extended the *Coty* presumption

---

[2] The relevant questions under *Coty*, 418 S.W.3d at 605, are whether:

(1) the technician in question is a state actor, (2) the technician has committed multiple instances of intentional misconduct in another case or cases, (3) the technician is the same technician that worked on the applicant's case, (4) the misconduct is the

to "cases involving police officers who display a pattern of mendacity in obtaining drug arrests and convictions[.]" 638 S.W.3d at 690. Thus, when an applicant demonstrates that (1) a police officer who (2) "has committed multiple instances of intentional misconduct in another case or cases" (3) is the same state actor as in the current case, (4) has previously committed "the type of misconduct that would have affected the evidence in the applicant's case[,]" and (5) acted in the applicant's case "within roughly the same period of time as the other misconduct[,]" a reviewing court will infer that evidence derived from that officer is false. *Id.* at 690–91. When the State fails to rebut that inference, the reviewing court will go on to inquire whether the use of that presumptively false evidence was material. *Id.* at 689; *Coty*, 418 S.W.3d at 605. The applicant, of course, continues to shoulder the exclusive burden of showing the materiality of the false evidence. *Mathews*, 638 S.W.3d at 691.

*Coty* and *Mathews*, however, considered only cases in which the applicant alleged that evidence of his *guilt* was false. And, at least in his first ground, Applicant does not raise that kind of claim. Rather, in his first ground Applicant alleges that the statements made by Goines in his affidavit to obtain a warrant—which was, in turn, used to obtain the evidence of his guilt—was false. Does the *Coty/Mathews* framework apply to this kind of claim? Indeed, does our false evidence jurisprudence even apply to statements made in search warrant affidavits—*i.e.*,

---

type of misconduct that would have affected the evidence in the applicant's case, and (5) the technician handled and processed the evidence in the applicant's case within roughly the same period of time as the other misconduct.

statements which are not themselves *evidence of guilt* at all? Nothing in our leading cases on false evidence suggests to me that the Court has already answered that question. *See Ex parte Weinstein*, 421 S.W.3d 656 (Tex. Crim. App. 2014) (concerning false trial testimony); *Ex parte Chavez*, 371 S.W.3d 200 (Tex. Crim. App. 2012) (same); *Ex parte Chabot*, 300 S.W.3d 768 (Tex. Crim. App. 2009) (same).

Thus, if by granting relief the Court means to answer both of these important predicate questions affirmatively, then the Court should say so explicitly, with an explanation of its rationale, in a published opinion. Likewise, it should articulate the standard for showing materiality in these circumstances and explain how Applicant has carried his burden of materiality. Until the Court explains what the correct standard by which to evaluate Applicant's claim is, I cannot agree that Applicant has met those standards.

### III. MATERIALITY OF THE TRIAL TESTIMONY

With respect to Applicant's second ground for relief, I am not persuaded that Applicant has carried his burden. I do not doubt that Applicant can satisfy the requirements of *Coty* and *Mathews* so as to invoke the Court's presumption of falsity regarding Goines's trial testimony. But Applicant also bears the burden to prove that the testimony he seeks to have this Court disregard was material. *Mathews*, 638 S.W.3d at 691.

Under *Weinstein*, "[o]nly the use of *material* false testimony amounts to a due-process violation." 421 S.W.3d at 665. And, to show materiality, Applicant must demonstrate by a preponderance of the evidence that "the error contributed to his conviction or punishment"

*Chabot*, 300 S.W.3d at 771. Count me as skeptical.

Goines was not the only law enforcement officer to testify at Applicant's trial. It is uncontested that Applicant was present at the home when *several* law enforcement officers arrived there to execute the warrant. According to Officer Richard Salter, who described himself as the "point man" for the execution of this warrant, when officers arrived, "the defendant [*i.e.*, Applicant] started to run into the house, but didn't get very far." And, when asked what stood out to him as he entered the house, the third officer who testified at trial, Sergeant John Yencha, testified that "what caught my attention right away was a little tray with some crack rocks on it. In the kitchen, there was a scale there and the money and there was also an ID on the counter." He then identified State's Exhibit 8, Applicant's ID, as the ID he saw on the kitchen counter.[3] Given this evidence tying Applicant to the home in which the drugs were found, I am unconvinced that Applicant has shown by a preponderance of the evidence that the admission of Goines's presumptively false testimony was material.

## IV. POTENTIAL FOR PRESUMPTION REBUTTAL

Moreover, the record in this case also suggests that still other evidence, at least potentially, might have been available to corroborate Goines's version of events. If other credible evidence could have independently shown Applicant's guilt, even without Goines's

---

[3] Although it is not entirely clear from the record, Yencha testified that he was one of the first officers who entered the house alongside Salter, while Goines testified that he (Goines) was among the last of the team to enter the house. This tends to suggest that the ID belonging to Applicant, which Yencha identified at trial, was already on the kitchen counter when Goines entered the home.

testimony, then the credibility of Applicant's claim that no other evidence links Applicant to the drugs found inside the house is suspect, and once again renders me skeptical of Applicant's claims for that reason as well. It at least suggests the possibility that *a diligent prosecutor* might still be able to rebut the *Coty/Mathews* presumption of falsity in this case should such a prosecutor care to make the effort. *See Mathews*, 638 S.W.3d at 689−690 ("[I]f an '[a]pplicant can establish the necessary predicate facts, then the burden shifts to the State of offer evidence demonstrating that the [state actor in applicant's case] committed no such intentional misconduct in the applicant's case.'") (quoting from *Coty*, 418 S.W.3d at 605).

First, Goines testified that during his surveillance of the home, he observed Applicant enter the house by using a key to unlock the burglar bars on a side door. He also testified that the surveillance was conducted by him "and another officer." If that other officer also observed Applicant entering the home where the drugs were later discovered in the way Goines described, then the State could have proven that link to the drugs even without Goines's testimony.

Second, Goines testified that he retrieved a key from Applicant that fit the lock of the burglar bars on the door to the house. While neither of the other two officers who testified at Applicant's trial corroborated this testimony, the record indicates that there were five other officers who did not testify at all. As the ultimate factfinder in these circumstances,[4] I would remand this writ application with

---

[4] *See Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) ("For over forty years, our writ jurisprudence has consistently recognized that this Court is the ultimate factfinder in habeas corpus proceedings.").

instructions to the trial court to determine whether any of the other officers present could have corroborated Goines's testimony about this key at trial.

Finally, Goines testified that, at the conclusion of the search, Applicant asked Goines to leave the car that was parked in the driveway and the house itself in the custody of his relative, Darrell Prophet, who was one of the people present at the scene during the search but was not arrested. This indication that Applicant had some possessory interest in the property would, again, suggest that Applicant possessed the drugs that were found inside the house. I would therefore, again, remand the writ application to the convicting court with instructions to develop the record with respect to this claim. In particular, I would instruct the convicting court to obtain testimony from Darrell Prophet to determine whether he was, in fact, left in custody of the vehicle and home at issue at the conclusion of the search and if that action was undertaken at Applicant's direction.

## V. CONCLUSION

The Court today grants Applicant relief on the basis that Gerald Goines included presumptively false information in a search warrant affidavit and gave false testimony at Applicant's trial. But without first developing the record in the ways I have described here, I do not think the Court can accurately assess whether any of Goines's presumptively false trial testimony should, in fact, be considered in this case to be true, or whether any such presumed falsity has been shown by Applicant to be material. I believe the Court should not declare that Goines's testimony was material when the record indicates that there was other

evidence showing Applicant's possession of the drugs at issue. I also believe the Court acts to quickly here to grant relief to Applicant where there may have been even more evidence available to prove his possession of those drugs that the State might have resorted to, had everyone known—both the defense and the State—that Goines's testimony was subject to impeachment based on his established general lack of credibility. I would remand the case for those purposes.

I believe that, although Applicant might ultimately be entitled to relief, the Court has prematurely granted relief without considering important questions of law with respect to the applicability of the *Coty/Mathews* framework to these circumstances, and on an inadequately developed factual record. Therefore, I must respectfully dissent.

**FILED:**                               August 21, 2024
**PUBLISH**