

# In the Court of Criminal Appeals of Texas

No. WR-62,917-02

EX PARTE JOE DAVID PADRON,

*Applicant*

On Application for Writ of Habeas Corpus
In Cause No. CR02004423-F(1)
In the 214th District Court
Nueces County

YEARY, J., filed a dissenting opinion in which SCHENCK, P.J., and FINLEY, J., joined.

This is a post-conviction application for writ of habeas corpus, brought under Article 11.07. TEX. CODE CRIM. PROC. art. 11.07. The Court grants Applicant relief based on one of his claims, albeit in a brief, uninformative per curiam opinion. I would file and set this cause to consider several questions that seem to me to have been glossed over.

Because the Court does not, I respectfully dissent.

## I. BACKGROUND AND CLAIMS

In a trial conducted in 2004, Applicant was convicted of three counts of capital murder, and the jury answered the special issues in such a way that he was assessed three concurrent life sentences. His conviction was affirmed on direct appeal. *Padron v. State*, No. 13-06-00464-CR, 2008 WL 5575068 (Tex. App.—Corpus Christi Aug. 14, 2008) (mem. op., not designated for publication).

In 2022, Applicant filed an initial post-conviction application for writ of habeas corpus. Among the claims he has raised is that there is new evidence which, when added to the evidentiary mix, would by clear and convincing evidence cause his jury to have a reasonable doubt about his guilt, entitling him to relief under *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). The convicting court has *not* recommended that we grant relief under this so-called "actual innocence" theory, and the Court today does not do that.

But the parties agree, and the convicting court recommends, that relief be granted—and the Court today *does* grant relief—on one of Applicant's other claims: that the State unknowingly presented false evidence in the form of testimony against Applicant from two out of the three jailhouse snitches who testified at his trial, citing *Ex parte Chabot*, 300 S.W.3d 768, 771 (Tex. Crim. App. 2009).

No physical evidence tied Applicant to the offense. Applicant's conviction rested in part on the testimony of the three jailhouse snitches, who claimed to overhear Applicant essentially admit to the offense while in jail. And it was also supported by an eyewitness who claimed to have

recognized Applicant from the dome light of the getaway vehicle when he removed his ski mask while getting into the back seat, immediately after the shooting.

One of the three jailhouse snitches has since recanted his testimony; and a second, though he has not recanted, has been seriously impeached with new evidence to suggest that he may have made up his trial testimony to curry favor with the prosecutor. Additionally, a law professor has bolstered this recantation/impeachment evidence with additional empirical evidence suggesting the unreliability of jailhouse-snitch testimony in general, deriving from the advent of DNA technology that purportedly now demonstrates how frequently such evidence leads to false convictions. That is the evidence which undergirds Applicant's unknowing-use-of-false-evidence claim.

## II. DISPOSITION

I am unwilling at this juncture to join the Court's per curiam opinion granting relief. For most of the history of this litigation, the State seems to have vigorously opposed granting relief—right up until shortly before the convicting court ultimately issued its recommended findings of fact and conclusions of law. The State's arguments were far from frivolous. Nevertheless, the Court is content to follow the convicting court's recommendation without any discussion of several issues that seem to call for greater scrutiny.

I would not grant relief without first filing and setting the cause for more in-depth treatment of the issue and oral argument. We are, after all, the court of return in non-death-penalty capital cases. TEX. CODE CRIM. PROC. art. 11.07, § 3(a). And we are not bound by the State's

belated confession of error in the case. *See Ex parte Nicholson*, 634 S.W.3d 743, 744 (Tex. Crim. App. 2021) (Yeary, J., dissenting) (observing that "we are not bound by" a State's confession of error and that this "principle is even more compelling in the context of a post-conviction writ of habeas corpus, in which this Court is the ultimate fact-finder") (citation and internal quotation marks omitted).

With respect to the false evidence claim, I am not certain it is appropriate to characterize the jailhouse-snitch testimony in this case as "false." The snitch who recanted has had a history of vacillating with respect to the information he has supplied about this case over the years. The second snitch has not recanted at all; he has merely been impeached. And there has been no evidence presented specifically to show that the third snitch's testimony was false at all, other than the law professor's general testimony. That testimony provides little, it seems to me, that the average juror's intuition would not already tell him about the level of skepticism that should be brought to bear upon such testimony.

Under the circumstances presented here, the Court should be reluctant to accept the convicting court's conclusion that the State inadvertently used *false* evidence. The worst that can be said here is that it *might* have been false. But there is also still a significant possibility that it *might* have been *true*. And when the balance is just even—when there is not at least a clear preponderating imbalance in favor of the Applicant's claim of falsity—then we should defer to a jury's resolution of questions of historical facts. *See Ukwuochu v. State*, 613 S.W.3d 149, 157 (Tex. Crim. App. 2020) ("[O]ur cases have been

consistent in signaling that to meet the falsity prong, some 'definitive or highly persuasive evidence' is needed to undermine the truthfulness of the evidence adduced at trial.") (quoting *Ex parte De La Cruz*, 466 S.W.3d 855, 867 (Tex. Crim. App. 2015)).

What is more, even the convicting court in this case has concluded that the State's use of the allegedly "false" evidence was "unknowing[.]" Majority Opinion at 1. Because the *inadvertent* use of false evidence involves *no complicity* on the part of the State, granting relief on that basis does not really implicate the fairness of the process. Rather, the determination to grant relief in such a case ought to be focused on whether the alleged false evidence influenced the result of the proceeding. Granting relief in such a case should rest upon the rationale that we are simply unwilling to accept the result of a trial at which such misleading evidence was presented. The accuracy of the result rather than the fairness of the process should be the touchstone.

But accuracy of result is also the impulse behind granting habeas corpus relief based on an *Elizondo* (so-called) "actual innocence" claim. And these false evidence claims are not the same as *Elizondo* claims. I tend to agree with former Judge Price's assessment that, "[u]nless we are to allow our false evidence jurisprudence unduly to encroach upon our actual innocence jurisprudence, . . . when it comes to claims of the inadvertent use of false evidence, we must not be overly liberal in how we characterize 'false' evidence." *Ex parte Robbins*, 360 S.W.3d 446, 465 (Tex. Crim. App. 2011) (Price, J., concurring). Demonstrations of falsity, particularly when the Court addresses inadvertent false evidence claims, should—at a minimum—be fairly compelling. *See Ukwuochu,*

613 S.W.3d at 156 ("To prove the falsity prong of a false-evidence claim, the record must contain some credible evidence that clearly undermines the evidence adduced at trial, thereby demonstrating that the challenged evidence is, in fact, false.").

The convicting court has not recommended that we grant "actual innocence" relief in this case. In my view, then, we should not be too hasty in concluding that the new evidence presented to undermine the jailhouse-snitch testimony from trial has definitively shown that the challenged trial testimony was "false." Before accepting that claim, the Court should be truly *convinced* of its falsity, not merely persuaded of the existence of a risk that it might have been false.

### III. CONCLUSION

This is an old conviction,[1] for a very serious offense. We should not set it aside precipitously. I would file and set this application for a more transparent consideration and resolution of the issues identified above. Because the Court does not, I respectfully dissent.

**FILED:**                                        April 16, 2025
**PUBLISH**

---

[1] Applicant waited eighteen years to file this, his initial post-conviction application for writ of habeas corpus. That is a long time. His habeas counsel has suggested reasons for why it took so long to marshal the evidence to support his claims. *See Ex parte Diaz Hernandez*, 683 S.W.3d 426, 427 (Tex. Crim. App. 2024) (Yeary, J., dissenting) (laches "includes neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done") (citations and quotation marks omitted). But the Court should not wholly ignore the fact that the passage of time tends to erode the reliability of evidence and testimony in deciding this case.