WR-82,876-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/23/2015 2:59:15 PM
Accepted 7/23/2015 3:27:49 PM
ABEL ACOSTA
CLERK

FILED IN
COURT OF CRIMINAL APPEALS

July 23, 2015

ABEL ACOSTA, CLERK

## No. WR-82,876-01

## IN THE COURT OF CRIMINAL APPEALS

### EX PARTE BRYAN ELLIOTT PALMBERG,
APPLICANT

On Application for Writ of Habeas Corpus in Cause No. 1121345-A,
Challenging the conviction in Cause No. 1121345,
From the 179th Judicial District Court of Harris County, Texas

### APPLICANT'S BRIEF

**Oral Argument Requested**

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

NICOLAS HUGHES
Assistant Public Defender
Harris County, Texas
TBN: 24059981
1201 Franklin St., 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax:    (713) 437-4316
nicolas.hughes@pdo.hctx.net

**ATTORNEY FOR APPLICANT**

**IDENTITY OF PARTIES AND ATTORNEYS**

APPLICANT:                                    BRYAN ELLIOTT PALMBERG


TRIAL PROSECUTOR:                     STACY SEDERIS
                                                        Assistant District Attorney
                                                        Harris County, Texas
                                                        1201 Franklin Street, 6th Floor
                                                        Houston, Texas 77002


ATTORNEY AT TRIAL:                    HEATHER HALL
                                                        Attorney at Law
                                                        308 N Main St
                                                        Conroe, TX 77301-2810


PRESIDING JUDGE AT TRIAL:        HON. J. MICHAEL WILKINSON
                                                        179th District Court
                                                        Harris County, Texas
                                                        1201 Franklin Street, 18th floor
                                                        Houston, Texas 77002


ATTORNEY FOR STATE ON HABEAS:    INGER CHANDLER
                                                        Assistant District Attorney
                                                        Harris County, Texas
                                                        1201 Franklin Street, 6th Floor
                                                        Houston, Texas 77002


ATTORNEY FOR APPLICANT:          NICOLAS HUGHES
                                                        Assistant Public Defender
                                                        Harris County, Texas
                                                        1201 Franklin St., 13th Floor
                                                        Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND ATTORNEYS ............................................................................ II

TABLE OF CONTENTS .................................................................................................... III

INDEX OF AUTHORITIES ................................................................................................. V

STATEMENT OF THE CASE .............................................................................................. 1

STATEMENT REGARDING ORAL ARGUMENT ..................................................................... 1

ISSUE PRESENTED .......................................................................................................... 2

STATEMENT OF FACTS .................................................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................................................ 2

ARGUMENT ................................................................................................................... 3

I. Applicant's plea of guilty was involuntary when he was not aware at the time of his plea that the field test for controlled substances conducted by the police officer did not leave enough evidence for the drug lab to conduct its own testing. ..................................................................................................................... 3

A. Presumptive field tests for narcotic identification are inherently unreliable, inadmissible at trial, and cannot support a conviction for possession of a controlled substance ................................................................................................ 4

1. Presumptive field tests are simplified, cheap tests that can be performed under the conditions a law enforcement officer is likely to encounter .......... 4

2. Presumptive field tests are inappropriate for use beyond an initial determination of "probable cause" ................................................................. 4

3. Both this Court and the Texas legislature have deemed the results of a presumptive field test, even when coupled with the testimony of an experienced law enforcement officer, inadmissible and insufficient to support a conviction ............................................................................................. 5

a. Under *Curtis*, unspecific presumptive drug field tests are insufficient to support a conviction ............................................................................... 5

b. Presumptive drug field tests performed outside a laboratory are inadmissible under Article 38.35 of the Code of Criminal Procedure...... 6

B. The admission of inadmissible evidence against a defendant has been repeatedly held to be a basis for relief ..................................................................... 8

1. To a defendant who is deciding whether or not to plead guilty, a laboratory report indicating that no analysis could be performed is equivalent to laboratory report indicating that no controlled substance could be detected .................................................................................................................. 8

2. Strong parallels can be drawn between Applicant's claims in this case and claims of *Brady* violations, ineffective assistance of counsel, actual innocence, and the presentation of false evidence......................................... 10

a. A defendant is entitled to relief where his conviction is secured through use of false evidence................................................................................ 10

b. A defendant is entitled to relief when new evidence, discovered after a person's guilty plea, reveals that that defendant is innocent..................... 11

c. A defendant is entitled to relief when his lawyer inexcusably fails to investigate evidence material to a defendant's guilty plea ......................... 12

d. *Brady* entitles a defendant relief when the State failed to disclose material, exculpatory information prior to a guilty plea ........................... 13

e. A defendant should entitled to relief if he can prove that newly discovered evidence shows the evidentiary foundation underlying his conviction is invalid..................................................................................................... 14

PRAYER ................................................................................................................................ 15

CERTIFICATE OF SERVICE.................................................................................................. 16

CERTIFICATE OF COMPLIANCE .......................................................................................... 16

# INDEX OF AUTHORITIES

**Federal Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................. 13

*Hill v. Lockhart*, 474 U.S. 52 (1985) .................................................................... 12

*McCarthy v. United States*, 394 U.S. 459 (1969) ..................................................... 9

*Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005) ..................................................... 12

*Murray v. Carrier*, 477 U.S. 478 (1986) .............................................................. 15

**State Cases**

*Burch v. State*, No. 05–10–01389–CR, 2012 WL 2226456 (Tex. App.–Dallas June 18, 2012) (mem. op., not designated for publication) .............................................. 6

*Cude v. State*, 588 S.W.2d 895 (Tex. Crim. App. 1979) ...................................... 13

*Curtis v. State*, 548 S.W.2d 57 (Tex. Crim. App. 1977) ................................. 5, 6, 9

*Ex parte Carmona*, 185 S.W.3d 492 (Tex. Crim. App. 2006) ............................. 10

*Ex parte Chabot*, 300 S.W.3d 768 (Tex. Crim. App. 2009) ........................... 11, 14

*Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996) ............................. 11

*Ex parte Ghahremani*, 332 S.W.3d 470 (Tex. Crim. App. 2011) ........................ 14

*Ex Parte Hodges*, No. WR–80,680–02, 2015 WL 376201 (Tex. Crim. App. Jan. 28, 2015) (mem. op., not designated for publication) ............................................. 13

*Ex parte Imoudu*, 284 S.W.3d 866 (Tex. Crim. App. 2009) ........................... 12, 13

*Ex parte Kimes*, 872 S.W.2d 700 (Tex. Crim. App. 1993) ................................. 13

*Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014) ................................... 9

*Ex parte Morrow*, 952 S.W.2d 530 (Tex. Crim. App. 1997) ............................... 15

*Ex Parte Morton*, No. AP–76663, 2011 WL 4827841 (Tex. Crim. App. Oct. 12, 2011) (mem. op., not designated for publication)...................................................................... 12

*Ex Parte Robbins*, 360 S.W.3d 446 (Tex. Crim. App. 2011)................................................ 14

*Ex parte Rodriguez*, No. WR-61899-03, 2008 WL 2673789 (Tex. Crim. App. July 2, 2008) (mem. op., not designated for publication)........................................................ 11

*Ex parte Tuley*, 109 S.W.3d 388 (Tex. Crim. App. 2002) ................................................... 12

*Houston v. Indiana*, 553 N.E.2d 117 (Ind. 1990) .................................................................. 4

*Milam v. State*, No. AP–76379, 2012 WL 1868458 (Tex. Crim. App. May 23, 2012) (mem. op., not designated for publication)........................................................................ 8

*New York v. Swamp*, N.E.2d 774 (1995)................................................................................. 5

*Pena v. State*, 353 S.W.3d 797 (Tex. Crim. App. 2011)....................................................... 10

**State Statutes**

TEX. CODE CRIM. PROC. ANN., art. 11.073 (West 2013).................................................... 11

TEX. CODE CRIM. PROC. ANN., art. 38.35 (West 2005). ..........................................6, 7, 9

**Other Authorities**

Alan Harris, *A Test of a Different Color: The Limited Value of Presumptive Field Drug Tests and Why That Value Demands Their Exclusion from Trial*, 40 SW. L. REV. 531 (2011) ..... 4

Kirk M. Grates, et al., *Conclusion of Validation Study of Commercially Available Field Test Kits for Common Drugs of Abuse*, National Forensic Science Technology Center (2008) ................................................................................................................................ 5

U.S. Patent. No. US 3,955,926 (Issued May 11, 1976) ......................................................... 4

## STATEMENT OF THE CASE

On June 17, 2007, Applicant was charged with possession of substance in penalty group 1, less than one gram (cocaine) in Cause 1121345. Writ Exhibit 1.On June 19, 2007, pursuant to a plea agreement, Applicant pled guilty and was convicted. Writ Exhibits 2, 3. Applicant has collaterally challenged his conviction on the grounds that his plea was involuntary and that Applicant's conviction violates his right to due process. On February 10, 2015, the trial court entered agreed findings of fact and conclusions of law recommending relief. *Agreed Findings of Fact and Conclusions of Law, Ex parte Palmberg*, No. 1121345-A (179th Dist. Ct. Harris Cty., Tex. 2015) (filed Feb. 10, 2015). After Applicant's case was remanded to the trial court for additional findings, on May 19, 2015, the trial court entered agreed supplemental findings of fact and conclusions of law recommending relief. *Agreed Supplemental Findings of Fact and Conclusions of Law, Ex parte Palmberg*, No. 1121345-A (179th Dist. Ct. Harris Cty., Tex. 2015) (filed May 19, 2015).

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument may help categorize Applicant's case within the body of caselaw regarding involuntary pleas. Applicant requests oral argument with the belief that it can simplify the question before the court and can help harmonize the resolution of Applicant's case with existing caselaw.

1

## ISSUE PRESENTED

Applicant's plea of guilty was involuntary when he was not aware at the time of his plea that the field test for controlled substances conducted by the police officer did not leave enough evidence for the drug lab to conduct its own testing.

## STATEMENT OF FACTS

On June 17, 2007, Applicant was arrested for possession of substance in penalty group one, less than one gram (cocaine). Writ Exhibit 1. On June 19, 2007, just two days later, Applicant pled guilty and was sentenced to 180 days in the county jail. Writ Exhibits 2, 3. On September 14, 2009, years after Applicant's initial arrest and conviction, Houston Police Department laboratory analysts examined the evidence in Applicant's case and determined that there was no remaining sample that could be tested using laboratory equipment. Writ Exhibit 4, Supplemental Writ Exhibit 2. Without forensic analysis by an accredited laboratory, the evidence in Applicant's case was inadmissible in Court. Supplemental Conclusion of Law No. 8. Had Applicant know that the results of the presumptive drug test kit were inadmissible in court and there was no competent evidence to secure his conviction, he would have insisted upon his right to trial. Supplemental Conclusion of Law No. 16-18.

## SUMMARY OF THE ARGUMENT

This Court has previously held that the result of a presumptive drug test kit, even when coupled with the testimony of an experienced policeman, is insufficient to

support a conviction for possession of a controlled substance. Additionally, Article 38.35 of the Code of Criminal Procedure deems inadmissible most forensic analysis, including controlled substance identification, when conducted outside of an accredited laboratory. Due to a lack of unconsumed sample, a forensic analysis could not be performed in this case. The presumptive drug test kit in this used case, therefore, was inadmissible.

The presumptive drug test kit served as the evidentiary basis for Applicant's arrest and ultimate conviction. Applicant's plea agreement was based on the fundamental assumption that there was enough to legally support a verdict, an assumption both material to the case and which turned out to be false. This Court should grant relief on the basis that Applicant's due process rights were violated or on the basis of involuntary plea, as there was demonstrably insufficient evidence to support Applicant's conviction, a fact revealed only after the conviction occurred.

## ARGUMENT

I. **Applicant's plea of guilty was involuntary when he was not aware at the time of his plea that the field test for controlled substances conducted by the police officer did not leave enough evidence for the drug lab to conduct its own testing.**

3

**A. Presumptive field tests for narcotic identification are inherently unreliable, inadmissible at trial, and cannot support a conviction for possession of a controlled substance**

**1. Presumptive field tests are simplified, cheap tests that can be performed under the conditions a law enforcement officer is likely to encounter**

The development of the quick-acting reagents used in presumptive field tests attempted to address the need for a rapid and reliable test enabling law enforcement to combat the trade and consumption of narcotics. U.S. Patent. No. US 3,955,926 (Issued May 11, 1976). Presumptive drug test kits are designed to be "employed by 'field' personnel without scientific or laboratory skills for making quick decisions such as whether probable cause exists." *Houston v. Indiana*, 553 N.E.2d 117, 120 (Ind. 1990). "However, even guides created for [presumptive drug test kits'] proper usage state that the tests are only designed for the 'preliminary identification of drugs of abuse.' " Alan Harris, *A Test of a Different Color: The Limited Value of Presumptive Field Drug Tests and Why That Value Demands Their Exclusion from Trial*, 40 Sw. L. Rev. 531, 532 (2011).

**2. Presumptive field tests are inappropriate for use beyond an initial determination of "probable cause"**

One of the greatest limitations of most presumptive drug test kits is a lack of specificity: not only may a number of controlled substances demonstrate a positive

result, but over the counter drugs and other substances can demonstrate a false positive result. Kirk M. Grates, et al., *Conclusion of Validation Study of Commercially Available Field Test Kits for Common Drugs of Abuse*, National Forensic Science Technology Center (2008). This limitation was recognized by this Court almost four decades ago. *See Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977). While a presumptive test may be important for developing probable cause against a defendant, at trial where the standard of proof is "beyond a reasonable doubt," more than a field test must be conducted. *New York v. Swamp*, N.E.2d 774, 777–778 (1995).

**3. Both this Court and the Texas legislature have deemed the results of a presumptive field test, even when coupled with the testimony of an experienced law enforcement officer, inadmissible and insufficient to support a conviction**

**a. Under *Curtis*, unspecific presumptive drug field tests are insufficient to support a conviction**

In *Curtis*, the Court of Criminal Appeals held that the results of a Marquis reagent presumptive field test were inadmissible, as they were not specific:

> A Marquis reagent test which is positive does not prove a substance is heroin. Brown correctly testified that it was merely evidence that the substance was an opiate derivative. There are at least twenty-five organic substances that can be extracted from opium; morphine, codeine and paregoric are among these substances.

*Curtis*, 548 S.W.2d at 59. The *Curtis* Court further explained that an officer was not qualified to distinguish between chemicals by mere physical inspection:

5

> This Court has held that an experienced officer may be qualified to testify that a certain green leafy plant substance is marihuana. […] However, we are unwilling to say that an experienced officer can look at a white or brown powdered substance and testify that it is heroin since morphine, codeine, paregoric, other opiates, other controlled substances, and noncontrolled substances also appear in white or brown powdered form. A green leafy plant substance which is marihuana has different characteristics from other green leafy plant substances; an expert can determine the difference. The evidence here does not show that even the experienced expert can distinguish one white or brownish powdered substance from another and determine which is heroin.

*Id.* The *Curtis* court determined that the balance of the evidence, absent testimony from a laboratory analyst, was insufficient to support Curtis's conviction. *Id.* The rule set forth in *Curtis* remains vital today. *Burch v. State*, No. 05–10–01389–CR, 2012 WL 2226456, *6–7 (Tex. App.−Dallas June 18, 2012) (mem. op., not designated for publication) (holding that where laboratory report was inadmissible due to a Confrontation Clause problem, the law enforcement officer's testimony about the nature of the white substance involved in that case was also inadmissible).

### b. Presumptive drug field tests performed outside a laboratory are inadmissible under Article 38.35 of the Code of Criminal Procedure

The rule set forth in *Curtis* is bolstered by the Texas Code of Criminal Procedure. Article 38.35 of the Code of Criminal Procedure[1] provides that

---

[1] Article 38.35 applies to any "chemical […] test performed on physical evidence, […] for the purpose of determining the connection of the evidence to a criminal action" regardless of whether the test is performed by a "laboratory or *other entity* that conducts a forensic analysis subject to this article." TEX. CODE CRIM. PROC., art. 38.35(a)(1), (a)(4) (emphasis added). Presumptive tests are considered forensic analysis unless "performed for the purpose of determining compliance with a term or

6

admissibility of forensic evidence is predicated on the analysis of the evidence by an accredited laboratory:

> [A] forensic analysis of physical evidence under this article and expert testimony relating to the evidence are not admissible in a criminal action if, at the time of the analysis, the crime laboratory conducting the analysis was not accredited by the director under Section 411.0205, Government Code

TEX. CODE CRIM. PROC., art. 38.35(d)(1). Forensic analysis is broadly defined by the statute:

> "Forensic analysis" means a medical, chemical, toxicologic, ballistic, or other expert examination or test performed on physical evidence, including DNA evidence, for the purpose of determining the connection of the evidence to a criminal action.

TEX. CODE CRIM. PROC., art. 38.35(a)(4). As presumptive drug field test is a chemical test performed on physical evidence for the purpose of determining whether a substance may be a controlled substance, and is therefore evidence that the crime of possession of a controlled substance may have occurred, it is a forensic analysis. *Id.* As explained by this Court, Article 38.35 "makes the admissibility of some forensic evidence [including presumptive field tests] contingent on whether the analysis of the evidence was conducted at an accredited laboratory." *Milam v. State*, No. AP–76379, 2012 WL 1868458, 12 (Tex. Crim. App. May 23, 2012) (mem. op., not designated for

---

condition of community supervision or parole" and performed by or under contract with state parole departments or community supervision and corrections departments. TEX. CODE CRIM. PROC., art. 38.35(a)(4)(E).

7

publication). No laboratory analysis was conducted in this case, and there is no admissible proof that Applicant possessed a controlled substance.

**B. The admission of inadmissible evidence against a defendant has been repeatedly held to be a basis for relief**

**1. To a defendant who is deciding whether or not to plead guilty, a laboratory report indicating that no analysis could be performed is equivalent to laboratory report indicating that no controlled substance could be detected**

Procedurally and functionally, in terms of legally admissible evidence, there is no difference between a case involving a sample reported not to contain a controlled substance and a sample which cannot be tested by a laboratory. In both cases, the defendant is likely to have been arrested based on a presumptive field test.[2] At the point the defendant has been arrested, she has been told by a law enforcement officer that the substance tested positive for a controlled substance. A defendant's guilty plea is always contingent, whether the defendant believes she is guilty or not, on whether the defendant believes that the State can prove to a factfinder that the substance in question is in fact a controlled substance. In *Ex parte Mable*, this Court held that the

---

[2] Many Texas cases explore the link between presumptive field tests and the development of probable cause to justify an arrest or a search. *See e.g. State v. Davila*, No. 03-06-00214-CR, 2007 WL 542603 (Tex. App.-Austin Feb. 23, 2007, no pet.) (mem. op., not designated for publication); *Hall v. State*, No. 07-01-0014-CR, 2001 WL 1090133 (Tex. App.-Amarillo Sept. 18, 2001, no pet.) (mem. op., not designated for publication); *Bright v. State*, No. 04-99-00912-CR, 2001 WL 55723 (Tex. App.-San Antonio Jan. 24, 2001, no pet.) (mem. op., not designated for publication).

defendant's belief that the substance contained illegal drugs is critical to the decision to plea:

> In this case, all parties involved, including the applicant, incorrectly believed the applicant had been in possession of drugs. This fact is crucial to this case, and while operating under such a misunderstanding, the applicant cannot be said to have entered his plea knowingly and intelligently.

*Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014).

Until there has been a forensic laboratory analysis of a suspected controlled substance, there is no evidence sufficient to establish that a particular chemical sample is any particular substance. *Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977); TEX. CODE CRIM. PROC., art. 38.35(d)(1). The standard for evaluating a claim of involuntary plea is "whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ex parte Mable*, 443 S.W.3d at 131. The distinction between whether a laboratory tests a substance and determines the substance not to contain any controlled substance and whether the laboratory cannot perform a test is purely academic to a rational defendant: in neither case can law enforcement testimony or the presumptive test be used as evidence to secure a defendant's guilt. *Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977); TEX. CODE CRIM. PROC., art. 38.35(d)(1). No rational defendant, positively knowing that the State cannot prove every element in a criminal prosecution, would plead guilty to an offense. *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

**2. Strong parallels can be drawn between Applicant's claims in this case and claims of *Brady* violations, ineffective assistance of counsel, actual innocence, and the presentation of false evidence**

Applicant's claims revolve around the disclosure of evidence, material to Applicant's case, after Applicant had already pled guilty. Several other constitutional claims related to a defendant's right to a fair trial, including claims of ineffective assistance, *Brady* violations, actual innocence, and the presentation of false evidence, can also involve disclosures of evidence occurring after trial. A common theme among all these types of cases is focusing on whether the revealed evidence is material to a defendant's trial, and whether the result of the trial is called into question by the new evidence:

> The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense. Hence, the defendant must show that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had [there been] a timely disclosure.

*Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011) (citations omitted).

**a. A defendant is entitled to relief where his conviction is secured through use of false evidence**

The presentation of false evidence, whether or not the prosecution is aware that the evidence is false, violates a defendant's right to due process. *Ex parte Carmona*, 185 S.W.3d 492, 496–497 (Tex. Crim. App. 2006). In *Ex parte Chabot*, a co-defendant's

testimony was critical to establishing that Chabot, acting alone, sexually assaulted and shot the deceased. *Ex parte Chabot*, 300 S.W.3d 768, 771 (Tex. Crim. App. 2009). However, a DNA test revealed that the co-defendant, and not Chabot, had sexually assaulted the deceased. *Id.* This Court concluded that the new evidence deeply undercut the State's evidence and the perjured testimony from the co-defendant deprived Chabot of his due process rights. *Id.* at 772. This Court seemed to acknowledge that it is possible that fabricated evidence could result in an involuntary guilty plea. *See Ex parte Rodriguez*, No. WR-61899-03, 2008 WL 2673789 (Tex. Crim. App. July 2, 2008) (mem. op., not designated for publication) (defendant claiming, in part, his plea involuntary due to use of fabricated evidence against him).

**b. A defendant is entitled to relief when new evidence, discovered after a person's guilty plea, reveals that that defendant is innocent**

Even if a defendant receives a perfectly procedurally fair trial, due process may require the invalidation of a conviction when new, contradictory evidence is received by the court. *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996); TEX. CODE CRIM. PROC., art. 11.073. This Court has held,

> [P]unishment of an innocent person violates the Due Process Clause of the United States Constitution. Consequently, if applicant can prove by clear and convincing evidence to this Court, in the exercise of its habeas corpus jurisdiction, that a jury would acquit him based on his newly discovered evidence, he is entitled to relief.

*Ex parte Elizondo*, 947 S.W.2d at 209. "[This] policy applies with no less force when the conviction is obtained by a bench trial or guilty plea." *Ex parte Tuley*, 109 S.W.3d

11

388, 392 (Tex. Crim. App. 2002). A defendant's due process rights are not frozen in time at the point of trial; perhaps decades after a person's conviction, due process may require contemplation of whether, in light of new evidence, a defendant's conviction is fundamentally unfair. *See e.g. Ex Parte Morton*, No. AP–76663, 2011 WL 4827841 (Tex. Crim. App. Oct. 12, 2011) (mem. op., not designated for publication).

### c. A defendant is entitled to relief when his lawyer inexcusably fails to investigate evidence material to a defendant's guilty plea

Where a defense team inexcusably fails to investigate material evidence, even where the evidence is not a bar to prosecution against a defendant, a violation of the defendant's constitutional rights may occur. *See e.g. Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005). Furthermore, the right of effective assistance of counsel is not extinguished by the decision to plead guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Ex parte Imoudu*, this Court considered whether or not a lawyer's failure to investigate a psychiatric report rendered a defendant's plea involuntary. *Ex parte Imoudu*, 284 S.W.3d 866 (Tex. Crim. App. 2009). The Court noted that the failure to investigate the report amounted to a denial of the defendant's constitutional rights:

> Thus, we feel that counsel had a duty to investigate the possibility that Applicant was insane at the time of the offense given the likelihood of mental illness noted in reports from jail medical personnel. Instead, counsel failed to even obtain Applicant's medical records. If they had, it would have been clear from even a cursory reading of the documents that Applicant was suffering from some mental problems while he was incarcerated. This leads us to conclude that counsel was ineffective for failing to investigate whether Applicant was insane at the time of the offense.

12

*Ex parte Imoudu*, 284 S.W.3d 866, 870 (Tex. Crim. App. 2009).. Denial of effective assistance of counsel is a cousin of procedural due process claims, as ineffective assistance of counsel deprives a defendant of a fair trial. *See Cude v. State*, 588 S.W.2d 895, 897–898 (Tex. Crim. App. 1979).

### d. *Brady* entitles a defendant relief when the State failed to disclose material, exculpatory information prior to a guilty plea

The watershed Supreme Court case *Brady v. Maryland* established that the suppression of important evidence could violate a defendant's right to due process and entitled the defendant to a new trial:

> We agree with the Court of Appeals that suppression of this confession was a violation of the Due Process Clause of the Fourteenth Amendment.
> […]
> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady v. Maryland*, 373 U.S. 83, 87 (1963). Often, the substance leading to a *Brady* claim is not known at the time of trial, consequently *Brady* claims are cognizable on habeas corpus. *See Ex parte Kimes*, 872 S.W.2d 700, 701 n. 2 (Tex. Crim. App. 1993). The failure to disclose *Brady* material may render a plea involuntary. *See e.g. Ex Parte Hodges*, No. WR–80,680–02, 2015 WL 376201, 1 (Tex. Crim. App. Jan. 28, 2015) (mem. op., not designated for publication)..

13

### e. A defendant should entitled to relief if he can prove that newly discovered evidence shows the evidentiary foundation underlying his conviction is invalid

There is little to distinguish "perjured, fabricated, false, or even just plain misleading evidence" from one another, if the ultimate effect of the evidence is the same. *Ex Parte Robbins*, 360 S.W.3d 446, 464 (Tex. Crim. App. 2011) (J. Price, concurring). Indeed, this Court has made it clear that a "gap in the evidence" may "creat[e] a misleading impression of the facts" so great that it may violate a defendant's right to due process. *Ex parte Ghahremani*, 332 S.W.3d 470, 479, 481 (Tex. Crim. App. 2011). A due process violation is not made palatable in the absence of bad faith or misconduct, rather it depends on the likelihood that the misleading evidence contributed to a defendant's conviction or punishment. *Ex parte Chabot*, 300 S.W.3d at 772. Here, all parties were operating under the mistaken assumption that there was evidence that could be forensically analyzed by a laboratory in Applicant's case. This misunderstanding was fundamental to Applicant's decision to plea and to the outcome of Applicant's case. The same hesitation to uphold a conviction that is a product of a lawyer's failure to uncover important information, the suppression of evidence, or of missing evidence which later exonerates an innocent person should give this Court pause in this context.

Due process ensures that "the prisoner must always have some opportunity to reopen his case if he can make a sufficient showing that he is the victim of a

fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 515 (1986) (J. Stevens, concurring). No competent lawyer, knowing that the police officer's testimony regarding the evidence in Applicant's case and knowing that the presumptive drug field test was inadmissible would advise their client to plead guilty. *See Ex parte Bryant*, 448 S.W.3d at 40. No rational defendant, having been adequately apprised that there was no admissible evidence which could sustain a conviction under Texas's controlled substance act, "would not have pleaded guilty and would have insisted on going to trial." *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). If the State had possession of the laboratory report at the time of Applicant's plea or even if the defense lawyer had simply failed to investigate an existing lab report, Applicant would have a clear avenue for relief. The question of timing should not govern the ultimate disposition of Applicant's case when the materiality of the evidence not disclosed to the defendant and its impact on his decision-making process is the ultimately the basis for relief.

### PRAYER

Applicant prays that this Court grant relief and remand his case to the trial court for a new trial.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

**/s/** Nicolas Hughes

15

**NICOLAS HUGHES**
Assistant Public Defender
Harris County Texas
1201 Franklin Street, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 386-9278 fax
TBA No. 24059981
nicolas.hughes@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that a copy of this Applicant's Brief (Palmberg) has been served upon the Harris County District Attorney's Office – Conviction Integrity, on July 23, 2015 by electronic service.

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the page and word count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 3,540 words excluding portions not to be counted under TEX. R. APP. P. 9.4(i)(1).

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender