**Affirmed and Memorandum Opinion filed October 15, 2020.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-19-00557-CR

---

**TERRY ROY TENNARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 83256-CR**

---

### MEMORANDUM OPINION

In this appeal from two convictions for sexual assault of a child, appellant argues that his convictions must be reversed because the prosecution used false evidence against him and because his trial counsel was ineffective. For the reasons given below, we overrule each of these arguments and affirm the trial court's judgment.

# BACKGROUND

Appellant was a police officer at a middle school, and the complainant was a student where he worked. They allegedly formed a secret sexual relationship, which was finally revealed when the complainant's mother discovered lewd text messages on the complainant's phone.

As soon as the lewd text messages came to light, the complainant was taken to a nurse for a sexual assault examination. The complainant told the nurse that she first had sex with appellant during the previous school year, when she was thirteen years old. She also said that their last sexual encounter had occurred just one day earlier, at a time when she was fourteen years old.

In that last encounter, the complainant said that she performed oral sex on appellant, that he reciprocated the oral sex on her, and that they had vaginal sex with a condom. She also said that appellant kissed her all over her neck.

The nurse swabbed various parts of the complainant's body. An analysis of one of the neck swabs later revealed the DNA profile of a male, and appellant could not be excluded as a contributor of that profile.

Appellant was eventually charged with four separate offenses. The first two counts were for aggravated sexual assault of a child, based on allegations of vaginal and oral sex with the complainant when she was thirteen years old. The remaining two counts were for simple sexual assault of a child, based on allegations of vaginal and oral sex with the complainant when she was fourteen years old. Appellant pleaded not guilty to all four counts, and his case proceeded to a trial by jury.

During the trial, the complainant testified that she met appellant when she was in the sixth grade, but that nothing sexual developed between them until she entered the seventh grade. She said that they had sex throughout her seventh grade year, that

they had no contact during the summer recess, and that they resumed their sexual relationship when she returned for the eighth grade.

The complainant testified that she would meet appellant in his office, either during lunch breaks or after obtaining a hall pass during class. Then they would have sex on the floor while lying on top of a comforter that appellant kept in a cabinet. According to the complainant, appellant always used a condom.

Investigators searched appellant's office, where they found the comforter and other sexual paraphernalia like personal lubricants and a male genital desensitizer. They did not find any condoms, however.

A forensic scientist testified that she examined the comforter and found stains consistent with semen. Another scientist specializing in DNA analysis testified that one of the stains contained sperm cells, and that appellant could not be excluded as a contributor. This analyst also identified an epithelial cell fraction on the comforter containing the complainant's DNA profile.

Taking the stand in his own defense, appellant testified that he never had a sexual relationship with the complainant. Appellant said that he was encouraged to build a rapport with students, and that he had come to counsel the complainant whenever she had troubles with her boyfriend, her brother, or her parents. He also said that the complainant would visit him frequently because he had candy in his office.

Appellant disputed the significance of the physical evidence. He said that the sexual paraphernalia was contraband that he found on the middle school campus. He did not dispute that his sperm was on the comforter, but he said that he brought the comforter from home, intending to donate it to a janitor who had lost many belongings during Hurricane Harvey. Appellant said that the complainant never used

the comforter. He testified that the complainant only touched the comforter when she opened his cabinet to get candy, explaining that she would sometimes have to shove the comforter deeper into the cabinet in order to close the cabinet door. And as for his DNA profile on the neck swab, appellant testified that he merely touched the complainant's neck with his hand as he was escorting the complainant out of his office.

After considering this and other evidence discussed below, the jury rejected appellant's testimony and convicted him of the two counts of simple sexual assault of a child. The jury acquitted him of the more serious counts of aggravated sexual assault of a child.

## FALSE-EVIDENCE CLAIM

The complainant's phone was turned over to investigators, who extracted an exchange of text messages between appellant and the complainant. In those text messages, which were written just before their sexual relationship was discovered, the complainant asked appellant what he was doing, and he responded that he was thinking about "sumtn sweet" and that he wanted her "candy," which he later identified as her "pussy." The complainant said, "Yeah I know you want it." Appellant asked if the complainant would "swallow," and she responded "sure." A copy of these text messages was admitted into evidence during appellant's trial.

Investigators performed a separate extraction of appellant's phone, which was also admitted into evidence. That extraction also revealed an exchange of text messages between appellant and the complainant, but the only text messages sent from appellant were from an earlier date, and all of them asked the same question: "Who is this?" The extraction did not contain any of the lewd text messages that were extracted from the complainant's phone.

4

Appellant admitted during his trial that he sent the text messages that asked "Who is this?" He also testified that he never sent the lewd text messages. Defense counsel expanded on this testimony by developing evidence from other witnesses that the lewd text messages may have been "spoofed" as part of a scheme to frame appellant. Defense counsel also argued to the jury that the discrepancies between the two extractions created reasonable doubt in the prosecution's case. The jury implicitly rejected that argument.

Appellant now argues in his brief that the lewd text messages must have been false, and that his right to due process was violated when they were admitted into evidence.

False-evidence claims are typically raised at the habeas corpus stage, following the discovery of new evidence. *See, e.g.*, *Ex parte Chabot*, 300 S.W.3d 768, 772 (Tex. Crim. App. 2009) (holding that post-conviction DNA evidence established that the prosecution's primary witness had perjured himself). When such claims are raised on direct appeal, they are subject to the traditional rules of error preservation, which means that the defendant must have objected at the time the evidence was offered, unless there was no way for the defendant to reasonably know that the evidence was false. *See Estrada v. State*, 313 S.W.3d 274, 288 (Tex. Crim. App. 2010) (holding that the defendant had not waived his due-process complaint by failing to timely object); *Valdez v. State*, No. AP-77,042, 2018 WL 3046403, at *7–8 (Tex. Crim. App. June 20, 2018) (not designated for publication) (holding that the defendant had waived his due-process complaint where he was aware of the inconsistent statements and failed to object).

In this case, defense counsel never objected to the admission of the text messages on the grounds that they were false, and his spoofing theory is some indication that he knew about the potential falsity of that evidence. Even if we

5

assumed for the sake of argument that counsel was not required to timely object because he could not have reasonably known that the lewd text messages were false, and that he developed his spoofing theory during the trial rather than before it, we would still conclude that appellant is not entitled to relief.

To prevail on a claim of false evidence, the defendant must carry his burden of proving that the evidence was false and material to the conviction. *See Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014). Appellant argues in his brief that he satisfied this burden because certain records from his wireless carrier, T-Mobile, indicate that he never sent the lewd text messages to the complainant. This argument has not been fully developed.

The T-Mobile records were offered into evidence by the prosecution, not by the defense, and the defense objected to the records because they were hearsay and unaccompanied by a business records affidavit. The trial court sustained that objection, the T-Mobile records were never admitted into evidence, and their contents were not otherwise discussed by any live witnesses. However, the T-Mobile records were attached to our official appellate record.

The T-Mobile records show that appellant had multiple contacts with the complainant in the form of both incoming and outgoing phone calls. As appellant correctly observes in his brief, the T-Mobile records do not further reflect that he ever sent the complainant the lewd text messages.

Appellant believes that this omission demonstrates the falsity of the lewd text messages because the T-Mobile records otherwise show that he sent the inoffensive text messages that asked, "Who is this?" But appellant has not supported this point with any citation to the record, which was his burden. *See* Tex. R. App. P. 38.1(i). And as far as we can determine, this point is incorrect.

6

The T-Mobile records do not contain copies of any text messages at all, even though there is an introductory comment stating that "standard text messages **do** appear on this report" (emphasis in original). The T-Mobile records only show when text messages were sent and received, as well as the other phone number associated with those communications. Critically, the complainant's phone number does not match any of the phone numbers corresponding with appellant's text-message communications. While this evidence may support appellant's testimony that he never sent the lewd text messages to the complainant, it also conflicts with his testimony that he sent her the inoffensive text messages that asked, "Who is this?"

This conflict with the T-Mobile records was never explained during the trial because the defense successfully objected to the admission of those records. The defense could have explained the T-Mobile records by developing a case for false evidence in appellant's motion for new trial, but the defense used that motion to advance a completely different set of legal claims.

As an appellate court, we are not equipped to settle this evidentiary conflict. Because the T-Mobile records contain neither the lewd text messages that appellant denied having sent nor the inoffensive text messages that he admitted to having sent, we cannot determine whether the lewd text messages have been fabricated or whether the records themselves are incomplete. At most, we can only conclude that the T-Mobile records establish an inconsistency in the evidence, and without more, this inconsistency does not prove that the lewd text messages were false. *See Ex parte De La Cruz*, 466 S.W.3d 855, 870–71 (Tex. Crim. App. 2015) ("Here, the record merely highlights the existence of inconsistencies in the evidence presented at applicant's trial with respect to the location of the shooting, but those inconsistencies do not, without more, support the trial court's fact finding that Torres's testimony is false.").

<h1 style="text-align:center">INEFFECTIVENESS CLAIMS</h1>

In his next issue, appellant asserts multiple claims of ineffective assistance of counsel. We review such claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, appellant must prove by a preponderance of the evidence that his counsel's performance was deficient, and that the deficient performance was so prejudicial that it deprived him of a fair trial. *Id.* at 687. To establish deficient performance, appellant must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. And to establish prejudice, appellant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or prejudice defeats the claim of ineffectiveness. *Id.* at 697.

## I.     Failure to Investigate the T-Mobile Records

The prosecution subpoenaed the T-Mobile records and offered those records into evidence during the trial on the merits. But as we explained above in our discussion of appellant's first issue, defense counsel objected to those records and successfully kept them out of evidence.

Appellant now asserts that counsel must not have conducted a meaningful investigation of those records, because if he had, he would have realized that they did not contain copies of the lewd text messages. Appellant then argues that counsel should have used this omission to undermine the prosecution's case, and that counsel's failure to do so was objectively unreasonable and prejudicial.

When assessing counsel's performance, our review is highly deferential and begins with the strong presumption that counsel's decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877

8

S.W.2d 768, 771 (Tex. Crim. App. 1994). The effect of this presumption is that we cannot ordinarily conclude that counsel's performance was deficient on a silent record. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Counsel must usually be given an opportunity to explain his actions and omissions before he is condemned by a court for being unprofessional or incompetent. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

In this case, counsel had an opportunity to explain his decisions. Appellant filed a motion for new trial that raised several claims of ineffective assistance, and counsel responded to those claims in an affidavit. However, appellant did not raise a claim in his motion that specifically pertained to the T-Mobile records, and counsel did not otherwise address his strategy with regards to those records in his affidavit. Also, no evidence other than the affidavit was taken at the hearing on the motion for new trial, which means that the record is completely silent as to counsel's strategy.

When the record is silent, we will not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). This is a difficult standard, and the conduct here does not rise to that level as many reasons can be imagined for counsel's decisions.

Counsel could have reasonably concluded that the T-Mobile records were unnecessary to appellant's defense because the evidence already contained other discrepancies. Namely, the lewd text messages were on the extraction of the complainant's phone, but not on the extraction of appellant's phone. That discrepancy provided counsel with a substantial basis for arguing the existence of reasonable doubt, even without the T-Mobile records.

Depending on when (and if) he reviewed them, counsel may have also realized that the T-Mobile records were incomplete because they did not contain the separate

9

text messages that appellant admitted to having sent. Counsel may have reasonably feared that the prosecution could have exploited this omission to rebut any defensive theory that appellant did not send the lewd text messages.

Counsel may have also feared that the prosecution could have used the T-Mobile records for a different purpose, considering that they showed phone calls between appellant and the complainant well into the evening, after ten o'clock at night. Counsel could have reasonably concluded that these phone calls were suspicious and had a tendency to incriminate.

For all of these reasons, we conclude that appellant has failed to establish that counsel's performance was deficient.

## II. Failure to Retain Experts

In his next point, appellant argues that counsel was deficient for not retaining three experts. Instead of identifying these experts by name, appellant refers to them by the following specialties: (1) an expert in DNA analysis, who could testify about certain findings from the comforter, such as why the complainant's skin cells were found there but not any vaginal secretions; (2) an expert in psychology, who could challenge a witness for the prosecution who testified that the complainant exhibited certain signs of sexual abuse; and (3) an expert in digital forensics, who could testify about whether the extraction from appellant's phone showed any signs of deleted text messages.

Counsel broadly addressed these claims of ineffectiveness in his affidavit, explaining that he did not retain or consult with any experts out of financial reasons. Counsel said that appellant could not afford any experts, and counsel further asserted that he was unaware that he could have requested additional funding for experts from the trial court under *Ex parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005).

When, as here, a claim of ineffectiveness is based on counsel's failure to call a witness, the defendant must show that the witness would have been available to testify and that the testimony would have been beneficial to the defense. *See Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004); *see, e.g.*, *Briggs*, 187 S.W.3d at 462 (the habeas applicant produced evidence from multiple experts that her child died from a combination of natural causes and medical malpractice, rather than from her own actions). Appellant did not satisfy that burden because he did not identify any expert witnesses that counsel could have retained, whether they could have testified during his trial, or whether their testimony would have been beneficial. Without such proof, we conclude that these claims must fail. *See Jones v. State*, 500 S.W.3d 106, 116 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding that the defendant failed to establish that his counsel was ineffective by not engaging an expert witness because the defendant produced no evidence showing that an expert was available and that an expert could have offered beneficial testimony).

### III.  Failure to Question the Venire Panel About Community Supervision

Had the jury convicted him on either count of aggravated sexual assault, appellant would have been ineligible for community supervision because the complainant would have been younger than fourteen years of age at the time the offense was committed. *See* Tex. Code Crim. Proc. art. 42A.056(4). But because the jury acquitted him on both counts of aggravated sexual assault and convicted him on just the two counts of simple sexual assault, appellant was eligible to request community supervision during the punishment stage of his trial.

Counsel did not file a pretrial motion stating that appellant had no prior felony convictions, which was necessary to submit the issue of community supervision to the jury. *See* Tex. Code Crim. Proc. art. 42A.055(b)(1). But after the two guilty verdicts, the trial court permitted counsel to file a late motion, and the jury was

11

allowed to consider community supervision in its punishment deliberations. The jury did not recommend community supervision, however. It assessed appellant's punishment at fifteen years' imprisonment on each count, and the trial court stacked those two sentences.

Appellant then moved for a new trial, alleging that counsel was ineffective for not questioning the venire panel during voir dire about its attitudes towards community supervision. Counsel responded to this point in his affidavit, but his response was somewhat contradictory. He first asserted a belief that appellant was not eligible for community supervision, which tends to suggest that counsel's decision not to ask any questions about community supervision was the product of mistake, rather than of any strategic motivation. Counsel then asserted a second belief in his affidavit that the venire panel would have been busted if it had been questioned about community supervision, which tends to suggest the opposite conclusion that counsel's omission had been strategic.

The trial court denied appellant's motion for new trial without rendering any findings of fact and conclusions of law. Presuming all necessary findings in support of the trial court's judgment, we defer to the trial court's implied finding that counsel's affidavit lacked credibility. *See Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). That implied finding is supported by the seemingly contradictory beliefs asserted by counsel, as well as by the many trial strategies that can be imagined for not questioning the venire panel on the issue of community supervision. For example, counsel have may reasonably refrained from that issue because he was already satisfied with the composition of the panel, because he wanted to avoid giving the prosecution more information on which to exercise peremptory strikes, because he believed that such questioning could be perceived as an admission that there was credible evidence of guilt, or because of a combination

of any of these reasons. *See Goodspeed v. State*, 187 S.W.3d 390, 393–94 (Tex. Crim. App. 2005) (rejecting claim that counsel had been ineffective for not asking any questions at all during voir dire). The trial court accordingly had a substantial basis for rejecting appellant's claim of ineffectiveness.

## IV.    Opening the Door

The prosecution provided pretrial notice of intent to use evidence of an extraneous bad act. The evidence identified in the notice was that appellant, while in his thirties, had fathered a child with a girl who was only sixteen years old. Because the girl had been underage at the time of their sexual relationship, appellant could have faced a criminal charge for sexual assault, but none had yet been filed against him. Instead, the girl brought a civil suit against appellant to establish paternity and child support.

The defense filed a motion in limine with regards to the extraneous bad act, and the trial court ruled that the parties should approach the bench before delving into that subject. The prosecution ultimately requested that bench conference during appellant's time on the witness stand.

Near the end of its cross-examination of appellant, the prosecution published an audio recording of a phone call, in which appellant informed his wife that he had just been arrested and was currently in jail. The wife asked about the arrest, and the following exchange occurred:

Wife:       They came to the house?
Appellant:  Yep.
Wife:       They kick the door open?
Appellant:  Nope. They knocked. They knocked on it. I opened it.
Wife:       Huh?

Appellant: I opened it. They knocked on it. I should have just killed myself, man.

The prosecution elicited more testimony about appellant's contemplation of suicide, with the insinuation being that it demonstrated a consciousness of guilt. The prosecution then passed the witness.

When defense counsel resumed his redirect examination, he began by asking appellant about his comment on suicide. Appellant explained that he was overwhelmed and depressed because he had just been arrested, his wife had just moved out, his employer no longer supported him, and he felt like his life had slipped away. Counsel then asked, "Have you ever been accused of anything like that before?" Appellant answered, "No."

The prosecution then approached the bench and argued that counsel had opened the door to evidence of the extraneous bad act. Counsel responded that he only intended to convey the point that appellant had never before been in jail or faced formal criminal accusations. The trial court determined that counsel's phrasing was much broader and had left the impression with the jury that appellant had never before been accused of sexual misconduct with a juvenile. The trial court accordingly ruled that counsel had opened the door and that evidence of the extraneous bad act could be introduced.

The prosecution then elicited testimony that appellant had met the other girl at a juvenile detention center, where he formerly worked as a drill instructor. Appellant claimed that he believed the girl was an adult employee, when she was in fact a juvenile cadet. Appellant testified that he had sex with the girl after seeing her again at a club, and that she thereafter became pregnant.

Appellant claimed in his motion for new trial that counsel was ineffective for opening the door to this extraneous evidence. Conceding his own deficient

performance, counsel responded in his affidavit that he asked his question "without thinking of the consequences" and that he had "no strategic purpose in opening the door." The trial court rejected that claim, and we cannot say that the trial court's ruling was an abuse of discretion.

When a claim of ineffectiveness is based on counsel's introduction of an extraneous bad act, or on counsel's opening the door to such evidence, the defendant has the burden to show that the challenged evidence was "clearly inadmissible." *See Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006). Appellant cannot meet that burden because when, as here, the defendant is on trial for sexual assault of a child, any evidence that the defendant has committed another act of sexual assault against a child may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *See* Tex. Code Crim. Proc. art. 38.37, § 2(b). This rule of evidence means that appellant's extraneous bad act would have been admissible even if counsel had not opened the door. Thus, counsel's actions cannot form the basis of a claim of ineffectiveness. *See In re A.M.*, No. 04-06-00483-CV, 2007 WL 2376077, at *6 (Tex. App.—San Antonio Aug. 22, 2007, no pet.) (mem. op.) (concluding in a juvenile justice case that counsel's opening the door to evidence of extraneous bad acts was "irrelevant" because the evidence was admissible under Article 38.37).

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Jewell, and Zimmerer.

Do Not Publish – Tex. R. App. P. 47.2(b).